UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KEITH WATSON

       Plaintiff,                          Case No.: 3:15-cv-225

vs.

COMMISSIONER OF                       Magistrate Judge Michael J. Newman
SOCIAL SECURITY,                 (Consent Case)

       Defendant.

---

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

---

This Social Security disability benefits appeal is presently before the Court for disposition based upon the parties' consent. Doc. 8. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to child's insurance benefits and/or Supplemental Security Income ("SSI"). [1] This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 10), the administrative record (doc. 6),[2] and the record as a whole.

---

[1] "A claimant is eligible for child's insurance benefits so long as the claimed disability began before age twenty-two." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 362 (6th Cir. 2014) (citing 20 C.F.R. § 404.350(a)(5)). In assessing whether a claimant is entitled to child's insurance benefits, "the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a)(4) is used." *Bonham-Conn v. Comm'r of Soc. Sec.*, No. 08-13248, 2009 WL 3211000, at *5 (E.D. Mich. Sept. 29, 2009) (citing 20 C.F.R. § 404.1520(a)(1)-(2)). Regulations governing SSI are identical those contained in 20 C.F.R. § 494.1520, *et seq. Cf. Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Accordingly, citations in this Decision and Entry to 20 C.F.R. § 404.1520 *et seq.* are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

# I.

**A.    Procedural History**

Plaintiff filed for child's insurance benefits, DIB, and SSI alleging a disability onset date of April 1, 1991, *i.e.*, before Plaintiff's 22nd birthday.  PageID 70.  Plaintiff claims disability as a result of a number of impairments including, *inter alia*, hearing loss, sleep apnea, diabetes mellitus, chronic headaches, and obesity.  PageID 72.

After initial denial of his applications, Plaintiff received a hearing before ALJ Gregory G. Kenyon on December 12, 2013.  PageID 90.  The ALJ issued a written decision thereafter finding Plaintiff not disabled.  PageID 78.  Specifically, the ALJ's findings were as follows:

1.    Born [in] 1989, the claimant had not attained age 22 as of April 1, 1991, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2.    The claimant has not engaged in substantial gainful activity since April 1, 1991, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: bilateral sensori-neural hearing loss, obstructive sleep apnea, diabetes mellitus, a history of chronic headaches, and morbid obesity (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) and

416.967(a)[3] except that he can only occasionally crawl, crouch, kneel, stoop, balance, and climb ramps and stairs. He is prohibited from climbing ladders, ropes, and scaffolds. He is also prohibited from working around hazards, such as unprotected heights or dangerous machinery. He must avoid concentrated exposure to loud noise. He is limited to performing work in environments where he would be exposed to no more than moderate level background noise such as that found in a department store or a grocery store. He cannot perform telephone work. He is limited to occasional contact with coworkers and supervisors, and must have no public contact.

6.   The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born [in] 1989, and was 1 year[] old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering his age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 1991, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PageID 72-78.

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 50. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

**B. Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 72-78. Plaintiff, in his Statement of Errors, and the Commissioner, in response, also summarizes the evidence of record. Doc. 7 at PageID 912-26; doc. 8 at PageID 939-42. Except as otherwise noted in this Decision and Entry, the Court incorporates Plaintiff's summary and the ALJ's recitation of the evidence.

## II.

**A. Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff

disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.      "Disability" Defined**

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.      Has the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's RFC, can he or she perform his or her past relevant work?

> 5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III.

In his Statement of Errors, Plaintiff argues that the ALJ erred in failing to: (1) find a "severe" vision impairment at Step Two of the sequential benefits analysis and to consider any vision limitations in determining his RFC; (2) properly consider his morbid obesity pursuant to Social Security Ruling ("SSR") 02-1p.; and (3) properly evaluate his credibility, pain, and symptoms. Doc. 7 at PageID 919.

### A. Credibility

The Court is troubled by the ALJ's credibility analysis, and thus entertains this alleged error first. The ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). A claimant's credibility comes into question where his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence[.]" *Id.* "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used[.]" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 404.1529(a); *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994)).

"First, the ALJ will ask whether . . . there is an underlying medically determinable . . . impairment that could reasonably be expected to produce the claimant's symptoms." *Id.*

(citation omitted). Second, where, as here, the ALJ determines "that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). In considering the second part of the two-part analysis, the ALJ must consider a number of "[r]elevant factors," including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment undertaken by the claimant; (6) measures undertaken by the claimant to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id.* This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

In finding Plaintiff not credible, the ALJ first found that his "activities of daily living belie his allegations of complete disability." PageID 77. The Court finds that the ALJ's conclusion in this regard is unsupported by substantial evidence. Initially, the ALJ stated that

7

Plaintiff "is able to bathe and dress without assistance." *Id*.  This conclusion finds no support in the record.  Instead, the evidence demonstrates that Plaintiff is unable to clean all parts of his body; he cannot put on his own socks; he cannot tie his own shoes; and his friend has to shave his face for him.  PageID 98, 102-03, 324.  In fact, Plaintiff testified that he required assistance from his brother to get out of bed on 20 occasions over a two-month period of time.  PageID 106-07.  Based upon the foregoing, the ALJ's finding in this regard is not supported by substantial evidence.

Next, the ALJ also found that Plaintiff "can prepare simple meals."  PageID 77.  The ALJ cited no specific portion of the record to support such a contention.  *Id*.  In fact, the Court's careful review of the record reveals that Plaintiff specifically stated that he does *not* prepare his own meals because he cannot "see out of [his] right eye" and because he cannot "stand or sit for long" periods of time.  PageID 325.  During the administrative hearing, Plaintiff even testified that he lacks the strength to scoop ice cream.  PageID 102, 325.

The ALJ also found that Plaintiff's ability to do household chores belies his allegations of complete disability.  PageID 77.  Notably, during the administrative hearing, Plaintiff specifically testified that he does not do household chores and, instead, his mother performs those chores for him.  PageID 98.  In a functional report Plaintiff completed in August 2012, he noted that he puts his own clothes away, although "it takes [him] at least two hours . . . if [he does not] have help."  PageID 325.  As a result, Plaintiff only performed that single chore once per week.  *Id*.  Based upon the foregoing, the ALJ's finding in this regard is unsupported by substantial evidence.

The ALJ also found that Plaintiff's activity of going to the grocery store with his friend belies his allegations of complete disability.  PageID 77.  However, Plaintiff reported that he

only goes to the grocery "once a month" and that he does not "take much part" in the activity. PageID 327. Again, based upon the foregoing the ALJ's finding in this regard is unsupported by substantial evidence.

The ALJ also stated, without citation to the record, that Plaintiff's "headaches are not of such severity or frequency that he would be precluded from all work activity." PageID 77. However, Plaintiff specifically testified that he constantly suffers from headaches, and that he has headaches two times each week where he is unable to be in a well-lit room. PageID 105-06.

The ALJ also noted that the record did not present evidence of "knee joint instability." PageID 77. However, it is not clear to the undersigned how the lack of such evidence wholly undermines Plaintiff's credibility. While the ALJ seemed to suggest that the lack of such evidence conflicted with Plaintiff's statements concerning his ability to stand and walk without the use of a cane, such rationale overlooks Plaintiff's severe morbid obesity.[4]

Finally, the ALJ found that "the claimant . . . made inconsistent statements." PageID 77. Specifically, the ALJ noted:

> He variously stated that he could lift five pounds, ten pounds, and ten to fifteen pounds. He said that he can stand for three minutes, walk four minutes with his cane and two minutes without it, sit for twenty minutes, and drive for thirty minutes. However, he testified that he can stand five minutes and sit up to thirty minutes depending on the chair.

---

[4] The Commissioner argues that Plaintiff's failure to lose weight at the recommendation of his physicians undermines his credibility. Doc. 9 at PageID 955. Certainly, the ALJ never stated that Plaintiff's purported non-compliance in this regard undermined his credibility and, thus, the Court is unwilling to consider such *post hoc* reasoning on appeal. Further, the Commissioner's suggestion on appeal conflicts with applicable law in that, as held by the Sixth Circuit, "physicians' recommendations to lose weight do not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake treatment." *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986); *Posey v. Heckler*, No. 85-5410, 1987 WL 36583, at *3 (6th Cir. Jan. 14. 1987); *Marks v. Comm'r of Soc. Sec.*, No. 3:15-CV-339, 2016 WL 3661802, at *6 (S.D. Ohio July 11, 2016), report and recommendation adopted *sub nom. Marks v. Colvin*, No. 3:15-CV-339, 2016 WL 4411427 (S.D. Ohio Aug. 19, 2016).

*Id.* The Court finds that these relatively minor inconsistencies fail to provide substantial evidence supporting the entirety of the ALJ's credibility finding. Accordingly, based upon all of the foregoing, the undersigned concludes that the ALJ's credibility finding is unsupported by substantial evidence. Accordingly, reversal and remand under Sentence Four is warranted.

**B.      Severe Vision Impairment and Consideration of Limitations in RFC**

Plaintiff also alleges that the ALJ's failure -- to find that his vision impairment was "severe" as a matter of law at Step Two, and to consider that impairment and resulting limitations in assessing his RFC -- constitutes reversible error. Doc. 7 at PageID 928. Establishing a severe impairment at Step Two is a "*de minimis* hurdle[,]" *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Accordingly, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs* at 862.

Here, the record more than supports a conclusion that Plaintiff's vision impairment is "severe." PageID 770, 783, 787. Further, record-reviewing physicians Maria Congbalay, M.D., Steve McKee, M.D., and Jean Diemer, M.D. all found Plaintiff's vision condition to be a "severe" impairment, and examining physician Chul Kim, M.D. noted that Plaintiff has been blind since he was 18 months old. *See* PageID 120, 134, 770. The Commissioner, on appeal, concedes error in this regard and characterizes the failure to list Plaintiff's vision impairment among his severe impairments a mere "oversight" by the ALJ. Doc. 9 at PageID 944. Accordingly, without dispute, the ALJ committed error by failing to find Plaintiff's vision impairment to be a severe impairment at Step Two of the sequential evaluation analysis.

Here, however, the ALJ found that Plaintiff suffered from a number of other severe impairments -- namely, bilateral sensori-neural hearing loss, obstructive sleep apnea, diabetes mellitus, a history of chronic headaches, and morbid obesity.  PageID 72.  Upon finding the existence of at least one severe impairment at Step Two, "the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007) (citing Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *5 (July 2, 1996)).  Thus, if the ALJ found at least one severe impairment at Step Two, "the question of whether [he or she] characterized any other alleged impairment as severe or not severe is of little consequence."  *Pompa v. Comm'r Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003).  Instead, the relevant question is whether all impairments, whether severe or not, were considered in determining Plaintiff's RFC.  *Fisk,* 253 F. App'x at 583 (stating that error at Step Two is only reversible if the ALJ fails to "consider[] all of a claimant's impairments in the remaining steps of the disability determination").

The Commissioner, as noted, does not challenge Plaintiff's contention that the ALJ failed to specifically mention his vision impairment in determining the RFC.  Doc. 9 at PageID 944.  Instead, the Commissioner argues that such omission is harmless error because no medical source opined that Plaintiff was limited beyond the restrictions set forth in the ALJ's RFC finding.  *See id.* at PageID 944-45.  Specifically, the Commissioner argues that the prohibitions against climbing ladders, ropes or scaffolds, as well as the prohibition against working around hazards, unprotected heights, and dangerous machinery -- as found in the ALJ's RFC finding -- adequately account for all limitations arising from Plaintiff's vision impairment.  *See id.* at PageID 945.  Further, the Court notes that the record-reviewing physicians also noted, without

explanation, that Plaintiff had no visual limitations despite otherwise finding a severe vision impairment.  PageID 137, 151, 164.

The Court need not reach the issue as to whether the ALJ's errors concerning evaluation of Plaintiff's vision impairment are harmless or not.  Having found reversible error with regard to the ALJ's credibility finding, the Court concludes that, on remand, the ALJ shall consider Plaintiff's vision impairment to be severe and fully and adequately address and explain what, if any, work related limitations arise from: (1) that severe impairment; and/or (2) the combined effect of that impairment with Plaintiff's other impairments, both severe and non-severe.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).  The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case, the evidence of disability, while significant and seemingly credible, is not overwhelming in light of the overall lack of opinion evidence from treating and/or examining medical sources with regard to Plaintiff's work limitations.  Specifically, although Plaintiff has suffered from a vision impairment since early childhood, there is little opinion evidence

regarding limitations arising from such vision impairment, whether singly and/or in combination with his other impairments, both severe and non-severe.[5]  Therefore, a remand for further proceedings is proper.  On remand, the ALJ should: (1) conduct a proper Step Two analysis regarding Plaintiff's impairments; (2) conduct a proper RFC analysis based upon all of Plaintiff's impairments, severe, non-severe, singly, and in combination; and (3) assess Plaintiff's credibility anew.  In addition, the ALJ shall obtain further evidence from an examining source specifically setting forth limitations arising from Plaintiff's vision impairment.

## V.

For the foregoing reasons:

1. The Commissioner's non-disability finding is found unsupported by substantial evidence, and **REVERSED**;

2. This matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED**.


Date:   September 23, 2016                          *s/ Michael J. Newman*
                                                    Michael J. Newman
                                                    United States Magistrate Judge

---

[5] The Court acknowledges that the record-reviewing physicians found that Plaintiff had no vision limitations despite otherwise finding that his vision impairment is severe.  PageID 137, 151, 164. Unfortunately, the record-reviewers offered no explanation in this regard and the ALJ set forth no independent analysis concerning Plaintiff's vision limitations.  Further, while examining physician Chul Kim, M.D. noted that Plaintiff suffered from a number of impairments -- including the fact that he had been legally blind in his right eye since he was 18 months old, and further found that Plaintiff suffers from poor vision in his right eye as a result -- Dr. Kim offered no specific opinions concerning limitations arising from any of Plaintiff's impairments.  *See* PageID 770-74.